Mr. Riley, can you turn your camera on? There you go. Can you hear me? Yes. Mr. Buchanan, can you hear me? Yes, Madam Clerk. Great. Your Honor, would you like me to call the next case? Hold on a second, I'm trying to find Mr. Riley here. I don't see him on the list. He's just listed under Matt, under his first name, and then Guest. All right, I found that name. So, yes, please call the next case, Your Honor. Case number 19-2357, Northern Iowa, Heather Lopez v. Whirlpool Corporation. Very well, Mr. Riley, we'll hear from you first. Thank you, Your Honor. The district court improperly granted summary judgment with respect to Heather Lopez's housework environment claim, suspected discharge claim, and a retaliation claim. The district court also abused its discretion with respect to the imposition of a sanction related to the postponement of plaintiff's deposition due to treacherous court conditions. Starting with the housework environment claim,  In doing so, the district court improperly failed to credit Heather's deposition testimony. Thus, improperly raised the evidence and resolved factual disputes in favor of the moving party instead of the non-moving party, which is Heather. Heather's deposition testimony, she talked about Mr. Penney and the harasser repeatedly invaded her personal space, came from behind and repeatedly patted Heather on the arm and shoulder and back, repeatedly caressed her. He would get so close to her, she would have to move away. He harassed her on a number of occasions. The harassment increased as time went on. She described lots of incidents. She described tons of incidents where he would touch her shoulder and arm and back. She said that almost every time he came into contact with her, there would be some sort of touch involved. Counsel, were any of these incidents described with any particularity? It seems like they were very generalized. I think she gave general and specific testimony. She specifically described one instance where he held her hand and blew on her finger in a sexual way. She specifically described another instance where he approached Heather and put his hands on her shoulder and he lingered. She described that he was so close to her she could feel his breath. She put his hand on her shoulder for a long time. She described it in a creepy way. She said that it felt like it was a year. She also described another instance where he was so close to her she could feel his genitals up against her. She described another instance where he called Heather weak, a negative stereotype that's sometimes associated with females, when she complained of working. So, again, the testimony here was not vague. Heather clearly described who harassed her, Mr. Penney did. She described where the contact was. He touched her arm, shoulders, and back. She described the frequency of the conduct. Almost every time that they came into contact, she described there's tons of incidents. She also, as I said, gave some specific examples of when he did this. But, again, this was like an everyday occurrence, as she described. But she also gave some specific instances as well. So, both the broad and specific testimony would do the light most favor as a non-moving party, given her the benefit of all reasonable instances. There was a jury issue here on the severity and pervasiveness of the harassment. Likewise, the district court also did not credit her testimony when it came to whether or not Whirlpool had an issue of remedial action. The district court excused the failure to take remedial action because they didn't have enough time to know. According to the district court, it wasn't reported until August 17th. But, again, the district court failed to credit Heather's testimony that she had made multiple complaints to her supervisor, which was an appropriate person to respond to. Heather testified that she asked Sherry Grayland, the supervisor, to tell Mr. Penning to stay away from her. Heather told Ms. Grayland that Mr. Penning creeped her out. Heather complained of incidents involving Mr. Penning to Ms. Grayland over and over again, she said. Heather complained on August 11th and before August 11th. She described that a few times it was discussed. A couple of times they actually sat down and talked about it in a more formal setting. On August 11th and 12th, she talked about how it was unnerving having Mr. Penning fired. So, again, she gave multiple instances. These would have been before August 17th when the employer knew or should have known and should have had a duty. These were reported to the supervisor, who was an appropriate person to report harassment to. Counsel, does it make any difference in terms of whether Portal Cool was on notice that she filed only one written complaint and did not even mention Penning? No, I don't think there's any legal requirement that a complaint has to be in writing. She complained to her supervisor on multiple occasions. In fact, on the 17th, she complained to HR verbally. The written complaint was she was told to summarize what she was talking about, but, again, Ms. Heather also talked specifically on the 17th that she opened up and said everything about Mr. Penning. So, no, there is no requirement that a complaint has to be in writing. She talked multiple times. But you don't dispute that the one complaint that she did file did not even mention Mr. Penning? Sure, absolutely. And, again, that grounds for cross-examination. That's something a jury is going to look at. But that's inappropriate for the court to weigh that. I would register the court to weigh that in granting some judgment. That's a fact. Yeah, that's going to be something that's going to be subject to cross-examination, and a jury is going to take a hard look at it. A jury should take a hard look at it. What do you think she complained about orally to the supervisor? What's the evidence of what she complained about before the written complaint that didn't mention Penning? In the context of the deposition, she complained about the incidence of touching of the shoulder, back, and neck. Did she report this? She said she talked to Ms. Penning. So my understanding is the view and the evidence of the testimony, based on the answers that she gave, what she complained about was the instances we previously talked about, the touching. You say she reported that to which person? To her supervisor, Ms. Grayland, who, according to their statement of facts, that would be an appropriate person for Ms. Lopez to report harassment to. Ms. Grayland was her supervisor. So she reported this to Ms. Grayland on multiple occasions. It's undisputed that Penning is just a co-worker, though, right? Yes. For purposes of analysis, Alice Berger, she's a co-worker for those purposes. We're not disputing that. Regarding the retaliation claim, the court first of all said there was no particular activity. Again, the evidence is in prior complaints to Ms. Grayland, but specifically on August 11th and August 17th, Ms. Lopez said, I want to go to HR. Mr. Penning said you can't go. There was incidents. She went anyway. She wasn't able to report to HR on the 11th, but she talked to Ms. Grayland. On the 17th, she talked to HR, and again, according to Ms. Lopez, she told them everything about Mr. Penning, and she spilled the guts. After these instances, she went back to work. Ms. Lopez described a situation where she's on the line, and for an hour, he's within feet of her staring at her. He didn't break eye contact. She felt intimidated. She felt scared. He did it two days in a row. So again, I think it's clearly there was a reported act. She, A, reported on the 17th to HR, and she reported on the 11th to Ms. Grayland, which for retaliation purposes, the retaliation is defined under those reports. There's clearly a protected activity. Secondly, the court improperly granted summary judgment on the retaliation claim, improperly relying on pre-Burlington Northern case law. The court said, well, she didn't prove that she had a tangible job detriment as a result of the retaliation, and again, for the last 13 years, under Burlington Northern, you don't need that. You need some material adverse, which is something that might have persuaded a reasonable worker from making or supporting a charge of discrimination. Again, that clearly was established here. What was the evidence that would have dissuaded her from complaining? The conduct? Yeah. When Heather returned to work after making the complaint, Mr. Penning came to her spot, stared at her for over an hour. He was only feet from her. He did not break eye contact. He looked like he was pissed at her. Heather was scared, nervous, and shaking, and she could not do her job. This was extremely intimidating to Heather. She reported this to HR. HR said she's overreacting. She comes back the next day. Heather was stalked again by Mr. Penning the next day. Mr. Penning came into Heather's work area, looked pissed. He was there for at least 45 minutes. Not only that, Mr. Penning said in the HR case file that says if you threaten termination for reporting, that by itself is retaliation. But can a coworker threat termination? We did. Let me rephrase that. Can a coworker's threat qualify as materially adverse if the coworker has no authority to make any such action? If it would make a reasonable person more hesitant to report. Why would it make a reasonable person more hesitant to report if the coworker has no authority? Well, again, he actually made her intimidated to even report this to HR on two instances. She had to, I mean, at some point you don't know what people are going to do. But, again, when you're sitting there staring at somebody for an hour that they're shaking, they're trembling. Mr. Penning engaged in intimidating behavior that's far from trivial. The behavior intimidated Heather, leaves her scared, shaking, unable to do her work. Again, I think viewing the evidence by and large favorable to Heather, that behavior would have persuaded a reasonable person to oppose the termination. Sanctions motion. In this case, the descendant moved for sanctions pursuant to 28 U.S.C. 1927 and pursuant to the inherent power of the court. And that's what I briefed my resistance on. I resisted the motion on that. And the magistrate properly found that Whirlpool had not been entitled to the warrant of sanctions under 28 U.S.C. 1927. The magistrate also correctly found that I had not acted in bad faith. As such, you can't warrant attorney's fees based on the inherent power of the court, based on any circuit precedent. Thus, Whirlpool would not have been entitled to relief under either of the grounds I argued. Yet the district court, essentially sui sponte, utilized Federal Rule Procedure 37 to justify my warrant of sanctions. Again, I had no chance to respond to this before the sanction was imposed. I mean, this is a case where the magistrate concluded I did not manifest an intentional reckless disregard for my duties to the court. I did not act in bad faith, but deliberately attempted to forfeit efforts to depose a client. And, in fact, the magistrate discounted the request of sanction because the weather may have contributed to inability to conduct deposition. I mean, again, what happened here is that there was deposition scheduled on the 22nd. The news was saying it was unsafe to drive. I looked out and I saw four-wheel drive's fishtail. I had to drive a two-hour drive on two-lane roads on a day that roads were considered 100% snow and ice covered, where the National Weather Service and the Iowa Department of Transportation were advising against travel. Again, I mean, I have a family. I've got kids. I would have been putting my life in jeopardy to go there. It was a reasonable decision. I think we've all learned over the last few months you don't put somebody's life in danger for something that you can reschedule. But, again, the magistrate sanctioned me continuing that I did not put forth sufficient explanation for why the deposition on the 22nd couldn't have taken place on the 23rd or 24th. Because I thought all you said was your client, for undescribed reasons, was unavailable. On the 24th, my client was not available on the 24th. Yeah, but you didn't explain why or why you couldn't make her available. You just said she was unavailable. I thought maybe the magistrate judge thought that was an insufficient explanation given that the other side had traveled there and was waiting for you if the weather cleared. Don't you think you have to explain better why you can't work a little harder to get your client there on the 24th? I would say I worked very hard to get my client available. I had my client change a long-scheduled dental appointment to do the 30th. I would say that I offered the services of my daughter on the 30th. I offered when it was negative 30 and my client had a sick kid. I offered the services of my kid to watch sick kids. I've been over backwards. On the matter of the 24th, I'm just asking, since that's the date that I think is at issue here, whether the record had any further explanation of the unavailability. No, I begged her to do it. She said she absolutely could not do it on that short notice. I mean, we're talking the 22nd. The 23rd is when I got ahold of her and she couldn't do it the next day. At this point, I don't remember. I wasn't asked. There wasn't a hearing. If the court had said, hey, can you give an explanation of that at the time, I probably could have done it. She absolutely could not do that. And I was begging her to. And, again, I think I showed that through other instances where I offered the services of my daughter to babysit when she had a sick kid. That's pretty extreme. I had her change a dental appointment to make it work. So I would say that. And, again, the 23rd wasn't available because, again, the defense, in this case, wanted the 24th. And I went with that and I tried to get ahold of my client. She wasn't available. There's only so much I can do. I can beg and I can plead and I can try to make it work out, which I did all those things. But she couldn't do the 24th. I'm just wondering why the magistrate judge didn't accept that, and I'm wondering if it was because the explanation wasn't explained better. I don't know. In the context, I explained on other dates what I did. Yeah, I understand what you did on other dates, but the magistrate judge seemed to focus in on that one weekend there, 22, 23, 24. Well, 22, I couldn't do it because of the health. 23, the defense said do it the 24th, and I tried to reach my client. My client, I can't put a gun to her head and do it. She could not do it. I begged her to do it. I don't know. I don't know what the court was thinking. The district court also concluded that on the 29th, I was unable or unwilling to confirm a single day prior to the close of the discovery that my client would be available to be posed. I was also part of a court order. But that's actually not true. Based on the record that was attached, there was an e-mail from me that was sent an hour and 15 or 45 minutes after they sent it. On the 29th, I said my client and I are available. It said like 3 o'clock on the 29th. We're available on February 8th, which is in the discovery deadline. I sent that on the 29th. Didn't get a response. I sent an e-mail on the 30th. What about that? I didn't get a response. The following Monday was February 4th. I sent an e-mail saying what about that date? I didn't get a response. On the 5th, I sent an e-mail. Then we had a phone call. This was right before he filed the sanctions motion. And it said, oh, I've already booked that date. But, again, literally within an hour, he sent me an e-mail saying, are there dates we can do? I said, yes, we can do February 8th. Again, I had a trial set for February 4th. That's settling the Friday the 1st. But before that, I said, yeah, we can do the 8th. And that was within the discovery period. I see my time's up. I'll cut that off. But, again, I'll read it. Thank you. Thank you for your argument, Mr. Reilly. Mr. Vijay Kuhn, we'll hear from you. Thank you, Your Honors. May it please the Court. Your Honors, my name is Lavanga Vijay Kuhn, and I represent the Pelley Local Corporation. I ask that this Court affirm the District Court's decisions. There are two issues before this Court. The first is, did the District Court properly grant summary judgment on Ms. Lopez's complaint of sex discrimination and retaliation? And the second is, did the District Court abuse its discretion in imposing a $2,000 sanction on Ms. Lopez's counsel? I will take each in order. As for the first issue, I ask that this Court affirm the District Court's grant of summary judgment for the following reasons. The District Court properly dismissed Ms. Lopez's sex discrimination claim because there was no material issue, fact issue, as to follow. First, the conduct of the coworker who allegedly harassed her was not so severe and pervasive as to meet the very high threshold set by this circuit. And second, Whirlpool did not fail to take remedial measures because it was never given the opportunity, a reasonable opportunity to do so, especially in light of the fact that Ms. Lopez resigned from Whirlpool a mere four business days after submitting her complaint to HR. So the District Court properly found that Ms. Lopez failed to establish a prima facie case of sex harassment. To the extent Ms. Lopez has alleged constructive disregard, the District Court dismissed that claim also and properly because Whirlpool did not deliberately create the harassing conditions and, moreover, Whirlpool never had a reasonable opportunity to resolve her complaint. Mr. Riley says you had a reasonable opportunity at an earlier time based on the oral complaints to Graylin. What do you say about that? Yes, John, thank you for that question. The District Court properly found that Ms. Lopez was not able to testify with any specificity or provide any other evidence as to her allegations that she complained to the supervisor, orally or otherwise, with Graylin. There is no record that shows that she actually complained to Ms. Graylin about Ms. McKenning sexually harassing her. In fact, Ms. Lopez admits that she cannot recall what she told Ms. Graylin or when, and I'll refer the panel to pages 177, 241, 246, and 423 of the appendix. Your Honor, on the single occasion that she could specify to some degree that she had spoken to Ms. Graylin following an incident where she believes Mr. Penning laid his hand on her shoulder, even in that incident, on that particular occasion, Your Honor, when pressed at a deposition, she could not recall what she told Ms. Graylin, and that's on page 177 of the appendix. She said she couldn't recall exactly what she told Graylin, as I understand. Correct. That is correct, Your Honor. But she recalled that she did tell about the incident. She said that she could not recall exactly what she told. It's unclear, Your Honor, I believe. On summary judgment, though, wouldn't it support an inference that she told Graylin about the incident and just couldn't recall exactly what she told her about the incident? It could, Your Honor, but I would mention that one of the reasons why the district court dismissed this particular oral complaint is because she also admitted regarding the particular incident, Your Honor, that Ms. Graylin talked to Mr. Penning, and in Ms. Lopez's words, everything was fine, quote. That was a quote that comes from appendix page number 177, following whatever step Ms. Graylin took. So in summary, Your Honor, on this one occasion that she was able to recall that she talked to Ms. Graylin following an incident that she found to be harassing, by her own admission, she could not recall exactly what she told Ms. Graylin, and in any event, Ms. Graylin took appropriate remedial steps, and in her words, quote, everything was fine, unquote. To the extent, Your Honor, that she is claiming that there were tons of incidents of harassment other than those that the district court specifically pointed out and found that they simply did not meet the civilian pervasive standard under this circuit's law, those incidents are risky and nonspecific, and she certainly admitted that she did not complain about those incidents not to her supervisor, not to HR, and not to a union representative. In any event, Your Honor, Ms. Lopez has not shown, as she must, that the events underlying these vague complaints amounted to actionable sexual harassment, and for that reason alone, this court should ignore any complaints that she alleges she made regarding these vague incidents. Your Honor, it should be pointed out that this is not a situation where Ms. Lopez was unaware or shy about complaining. In fact, she admitted that she was well aware of Whirlpool's internal complaint procedure. You'll see that on pages 170 to 171 of the record, and in fact, long before her allegations of sexual harassment, she had a personality conflict with a female team lead. Ms. Lopez promptly went up to Ms. Grayland, her supervisor, and asked that she be placed in a different area of the facility, and Ms. Grayland did so without any pushback whatsoever because, in Ms. Lopez's words, both she and Ms. Grayland had just wanted to, quote, just nip it in the bud, unquote. Appendix page number 173. So, clearly, Ms. Lopez knew how to use these mechanisms, and she simply did not provide any specific testimony to the fact that she had actually complained about Mr. Penning sexually harassing her. Under those circumstances, Your Honor, we would argue that Whirlpool simply did not have an opportunity to address the issues that were raised in her complaint, which eventually she filed, but she filed it four days before she walked off the job, and it should be noted that even in that, and as one of Your Honors pointed out, even in that complaint, there is no mention of sexual harassment and there is no mention of Mr. Penning's name. Moreover, Your Honor, when she resigned, she left a voicemail with Whirlpool. She alleges she left a voicemail with Whirlpool. Even that voicemail, she admitted she did not know if she mentioned sexual harassment or Mr. Penning's name. So, we believe there's a pattern here. Could you address the retaliation claim and whether the district court applied the wrong standard in light of Burlington Northern? Of course, Your Honor. Yes, so with regard to the retaliation claim, Your Honor, there was, we believe that the district court probably dismissed Ms. Lopez's retaliation claim because there was no material fact issue as to the following. Ms. Lopez did not engage in protected activity because none of her complaints mentioned that she was subjected to sexual harassment from a co-worker. And Ms. Lopez also did not suffer adverse employment action at the hands of a co-worker. And even presuming that she had suffered an adverse action, Ms. Lopez cannot show that her complaints were the but-for cause for the adverse action because it is undisputed that a co-worker had no knowledge that he was the subject of her complaints. One of Your Honors pointed out that this was a co-worker and therefore he was unable to take any sort of adverse employment action. Indeed, the only adverse employment action counsel was able to point to was him coming and staring at her. And this particular adverse action, Your Honor, following the complaint, simply doesn't ride the level of material adverse employment action. And I'll point to cases that say that much, which is Hughes v. Stottelmayer, which is a case from the circuit, a 2006 case, which says an adverse action must affect a material change in the terms or conditions of employment. I had asked you, though, about Burlington Northern because that standard that you just quoted from Hughes came before Burlington Northern. And isn't it the case that Burlington Northern changed the standard? Yes, it did, Your Honor. But nonetheless, even on the Burlington Northern standard, we would argue that there simply isn't the but-for causation that we would find for a retaliation claim such as that. And that is certainly cited in the Jackman case from this particular circuit, which was a post-Burlington Northern case from 2013. As I mentioned, Your Honor, Mr. Penning simply had no knowledge of the complaints that he was the subject of Ms. Lopez's complaints until after she had filed litigation. That is an undisputed fact, Your Honor. And with regard to the point that you had raised regarding Mr. Penning being a coworker, certainly Ms. Lopez knew that she had no authority to hire, fire, or discipline, or even recommend discipline, for that matter. And that appears in the record. So it's... Clearly, he was not able to effect any adverse employment action. Counsel had mentioned that he had threatened her with termination when she allegedly wanted to go to HR. Your Honor, I submit that that is actually not in the record. That is not in the record. It's actually based on a questionnaire, exclusively on a questionnaire that is unauthenticated. We have argued that that questionnaire is unauthenticated in pages four through six of our brief. Therefore, there simply isn't any evidence in the record that this court could consider that Mr. Penning had threatened any termination. And even so, Your Honor, as one of Your Honors mentioned, Ms. Lopez knew that he was simply a coworker and not a supervisor, and that whatever threat had, even if we were to presume that there was a threat, that would have been an empty threat, and she knew it. In any event, she also admitted that he actually took her to HR on that particular incident. She also knew that there were multiple ways that she could complain to HR, as well as to a supervisor, as well as through anonymous calls. With regard to the sanctions argument that is before this court, Your Honor, we ask that this court affirm the district court's imposition of the $2,000 sanction on Ms. Lopez's counsel. This court reviews, as counsel conceded, this court reviews the district court's sanction for an abuse of discretion. This is a very deferential review that recognizes that a district court has wide discretion to fashion a remedy of sanction. Here, the $2,000... What was the misconduct here? Your Honor, the misconduct here... First of all, Your Honor, when we talk about misconduct, bad faith is not an issue here because the sanction was imposed under Federal Rule Civil Procedure 37D, which does not require a bad faith showing. So I want to clarify that with regard to your question on misconduct, but essentially what occurred here and what the record shows is two very expensive and important trips by Wilcool's counsel, happens to be me, to take plaintiff's deposition, but counsel scuppered those efforts multiple times due to his last-minute unilateral cancellations. And, Your Honor, without getting into the weeds on what the communications were between counsel, something that opposing counsel has simply not addressed and the magistrate judge, as well as the district court judge, recognized was that the fall of 2018 was largely wasted because of opposing counsel's unresponsiveness and failure to cooperate in scheduling these depositions. October of 2018 and November of 2018, he was unresponsive and then he was unwilling to commit to particular dates, which is why everything got compressed in the December-January period to schedule these depositions. And then on top of that, when we did try to schedule those depositions in that compressed schedule, all these unilateral cancellations occurred that cost Wilcool a great amount of money. Your Honor, it should be noted that this is, counsel raised an argument of lack of due process because the magistrate judge, Sue Esponte, based the sanction on this. This court has held that due process is satisfied if the sanctioned party has a real and full opportunity to explain the questionable conduct before sanctions are imposed. We cited Chrysler v. Carey, which is a 1999 case. Counsel had multiple opportunities to explain his conduct. First, when Wilcool filed the motion and then when he was unhappy that the magistrate judge imposed the sanction, he then filed a motion for reconsideration. He had the second opportunity there in his motion for reconsideration before the district court judge to explain his conduct. And again, the district court agreed with the magistrate judge that the sanction should be because of those two reasons. Your time has expired. We thank you very much for your artistry. Thank you very much, Jonas. Mr. Riley, would you care to make rebuttal? How much time does he have, if any? No time? I have no time. I'll give you one minute for rebuttal if you'd like to use it. Okay, thank you, Your Honor. Hold on a second. I can't tell if the clerk is telling me that he had time remaining or not. But we'll just go with the one minute. Go ahead. Thank you, Your Honor. Page 81 of the appendix, we talked, Mr. Defense Counsel talked of October, November, September 13th and the wasted fall and the sanctions. September 13, 2018, I reached out to defense counsel regarding depositions. We'd like to take the deposition of Mr. Penning and Grayland. And I said, I'm available in September. I did not get a response until October. I wasn't given dates until November that ended up not working. Again, we both could have been more diligent, but it went both ways. If you look at the joint motion that was drafted by the defense to extend the discovery deadline, again, defense counsel wrote that we acted diligently in order to get the extension he wanted. And he said that it's multiple attempts. Anyway, the event that was filed by defense counsel said that we were working together and we were both busy. And that's what happened. You shouldn't sanction one party. We'll take a careful look at that in the record and we thank you both for your arguments. The case is submitted and the court will file an opinion in due course.